FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 30, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AARON K., | No. 4:21-CV-05064-RHW |
| Plaintiff, | REPORT AND RECOMMENDATION |
| v. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, | ECF Nos. 13, 14 |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 13, 14.  Attorney Chad Hatfield represents Aaron K. (Plaintiff); Special Assistant United States Attorney Jeffrey E. Staples represents the Commissioner of Social Security (Defendant).  This matter was referred to the undersigned magistrate judge for issuance of a report and recommendation.  ECF No. 18.  After reviewing the administrative record and the briefs filed by the parties, the Court **RECOMMENDS** Plaintiff's Motion, ECF No. 13, be granted and Defendant's Motion, ECF No. 14, be denied.

## JURISDICTION

Plaintiff protectively filed an application for Disability Insurance Benefits on April 28, 2015, alleging disability since March 1, 2015.  Tr. 13, 66, 160-63.  The application was denied initially and upon reconsideration.  Tr. 88-90, 96-02.  Administrative Law Judge (ALJ) Jesse Shumway held a hearing on December 11, 2017, Tr. 29-65, and issued an unfavorable decision on March 14, 2018.  Tr. 10-28.

The Appeals Council denied Plaintiff's request for review.  Tr. 1-6.  Plaintiff filed an action in district court on March 26, 2019.  Tr. 526-28.  On March 10, 2020, this Court remanded the claim for further proceedings.  Tr. 537-60.

ALJ Shumway held a remand hearing on January 5, 2021.  Tr. 471-500. While the appeal was pending, Plaintiff filed an application for Supplemental Security Income; the ALJ consolidated the claims at the remand hearing.  Tr. 420; *see* Tr. 564, 877-92.  The ALJ issued a second unfavorable decision on February 17, 2021.  Tr. 417-45.  The Appeals Council did not assume jurisdiction of the case, making the ALJ's February 2021 decision the Commissioner's final decision for purposes of judicial review pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on April 19, 2021.  ECF No. 1.

## STANDARD OF REVIEW

The ALJ is tasked with "determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1098; *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the

ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four the claimant bears the burden of establishing a prima facie case of disability. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a significant number of jobs exist in the national economy which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497-1498 (9th Cir. 1984); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On February 17, 2021, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. Tr. 417-45.

At step one, the ALJ found Plaintiff, who met the insured status requirements of the Social Security Act through June 30, 2016, had not engaged in substantial gainful activity since the March 1, 2015 alleged onset date. Tr. 423.

At step two, the ALJ determined Plaintiff had the following severe impairments: lumbar degenerative disc disease and unspecified mixed seizure disorder. *Id*.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 424.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found he could perform light work, with the following nonexertional limitations:

> [Plaintiff] could not climb ladders, ropes, or scaffolds, and could only occasionally perform all other postural activities; he could not have concentrated exposure to extreme heat; he could have no exposure to vibration or hazards (unprotected heights or moving mechanical parts); and he could not operate a motor vehicle.

Tr. 426.

At step four, the ALJ found Plaintiff was able to perform past relevant work as a fast-food worker.  Tr. 434.

At step five, the ALJ found that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff could also perform other jobs that existed in significant numbers in the national economy, including the jobs of counter attendant, mail clerk, and inspector (hand packager).  Tr. 436.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from at any time from the alleged onset date through the date of the decision.  Tr. 436-37.

### ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and Title XVI of the Social Security Act.  The question presented is whether substantial evidence supports the ALJ's

decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff raises the following issues for review (1) whether the ALJ properly evaluated the medical opinion evidence; (2) whether the ALJ conducted a proper step-three analysis; (3) whether the ALJ properly evaluated Plaintiff's symptom complaints; (4) whether the ALJ properly evaluated lay witness testimony; and (5) whether the ALJ conducted a proper step-four and step-five analysis. ECF No. 13 at 8.

## DISCUSSION

### A.    Medical Opinion Evidence

Plaintiff contends the ALJ erred in his analysis of the medical opinions of Deborah Rogers, ARNP; Myrna Palasi, M.D.; Derek Leinenbach, M.D.; Scott Roberts, ARNP; and Debra Pollack, M.D. ECF No. 13 at 11-16.

For claims filed prior to March 27, 2017, there are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not . . . and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted). If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing

specific and legitimate reasons that are supported by substantial evidence." *Id.*  An ALJ may discount the opinion of an "other source," such as a nurse practitioner, if the ALJ provides "reasons germane to each witness for doing so."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§ 404.1502(a), 416.902(a).  The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record.  *Andrews*, 53 F.3d at 1041.  An ALJ may reject the opinion of a nonexamining physician by reference to specific evidence in the medical record. *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citations omitted).

    *1. Dr. Leinenbach*

       In February 2017, Dr. Leinenbach performed a review of medical evidence, disability/incapacity evaluation, and physical severity assessment on behalf of Washington State DSHS.  Tr. 1546-48, 1584-85.  Dr. Leinenbach reported he reviewed medical evidence including treating provider Ms. Rogers' February 2017 medical report, discussed *infra*, along with reports from examining providers in 2010 and 2012 and imaging of Plaintiff's back; and Dr. Leinenbach indicated Plaintiff's disability onset date was November 2009.  Tr. 1546, 1584.  Dr. Leinenbach opined Plaintiff's diagnoses included seizure disorder, moderate; lumbar degenerative disc disease; sciatica; and mitral valve regurgitation.  Tr. 1584.  He opined that the severity and functional limitations found by the examining providers were not supported by the available medical evidence, and that Plaintiff had marked limitations due to seizure disorder and marked limitations due to degenerative disc disease and sciatica.  Tr. 1584.  He indicated Plaintiff was not impaired due to substance abuse or chemical dependency.  *Id*.  He opined Plaintiff also had marked limitations in his ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, and that the highest level of work he could perform was sedentary work.  Tr. 1547.

The ALJ did not discuss Dr. Leinenbach's opinion in the decision except to note within the discussion of Ms. Roger's 2017 opinion that her opinion was "adopted by [DSHS] physician, Derek Leinenbach, M.D." Tr. 432. Plaintiff contends the ALJ erred in making no findings concerning Dr. Leinenbach's opinion. ECF No. 13 at 13-14. Defendant contends the ALJ reasonably considered Dr. Leinenbach's opinion together with Ms. Rogers because he "reached the same conclusions as Nurse Rogers." ECF No. 14 at 7-8.

The ALJ is required to consider "all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). Here, the ALJ briefly mentioned Dr. Leinenbach's opinion, citing to an incomplete form. Tr. 432 (citing Tr. 1546). Another page of the form is located within in the same exhibit, however, and includes Dr. Leinenbach's opinion of Plaintiff's functional limitations since 2009, which Dr. Leinenbach indicated he based on a review of records/reports from three providers along with medical imaging since that time; these records are also found in the same exhibit. Tr. 1584; *see* Tr. 1532-43, 1554-61, 1563-69. An error is harmful unless the reviewing court "can confidently conclude that no ALJ, when fully crediting the [evidence], could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). Here, Dr. Leinenbach explained he reviewed records and/or opinions of multiple providers, and review of the attached records include evidence of treatment for a prior lumbar back injury, including herniated discs at L4-L5 and L5-S1; injuries and subsequent treatment that are referenced throughout the record by multiple current providers in relation to Plaintiff's chronic back issues during the period at issue. *See, e.g.*, Tr. 361-62, 376, 378, 1135, 1555-56, 1558-61, 1563-69. The records Dr. Leinenbach reviewed include MRI that showed disc protrusion and herniation at L4-L5 with nerve root compression of left L5 and right S1 nerve roots as early as 2009; and in 2010 a DSHS examiner indicated Plaintiff had an abnormal MRI after a back injury with

REPORT AND RECOMMENDATION . . . - 7

1
2
3
4

"chronic back pain with disc herniation at L5-S1 with impingement of [right] L5 nerve root"; Plaintiff was limited to light work at that time, which Dr. Leinenbach later reduced to sedentary based on review of records through February 2017.  Tr. 1560-61.

5
6
7
8
9
10
11
12

The ALJ harmfully erred in failing to discuss this opinion, because Dr. Leinenbach's opinion appears to shed light on the chronic nature of Plaintiff's impairments, including chronic back pain, such that a reasonable ALJ could have reached a different disability determination.  Dr. Leinenbach's opinion was not cumulative of Ms. Roger's opinion and did not describe the same limitations.  *See Molina*, 674 F.3d at 1119, 1121.  Upon remand the ALJ is instructed to evaluate Dr. Leinenbach's opinion and adopt the limitations or provide reasons supported by substantial evidence to discount it.

13

### 2. Dr. Palasi

14
15
16
17
18
19
20
21
22

On November 28, 2018 Dr. Palasi completed a review of medical evidence form on behalf of Washington State DSHS and rendered an opinion on Plaintiff's level of functioning.  Tr. 1636-37.  Dr. Palasi opined that "this claimant is significantly debilitated by chronic pain from L-spine [degenerative disc disease] with multilevel nerve root impingements per MRI.  Recommend a less than sedentary RFC and a severity rating of 5 for L-spine [degenerative disc disease]."  Tr. 1636.  She indicated there was no evidence of drug or alcohol abuse, and that based on "available [medical evidence of record]" an onset date of February 2017 was supported.  Tr. 1637.

23
24
25
26
27
28

The ALJ gave Dr. Palasi's opinion little weight because "it is not supported by the imaging she cited, which shows only mild to moderate degenerative disc disease."  Tr. 433.  An ALJ may reject the opinion of a nonexamining physician by reference to specific evidence in the medical record.  *Sousa,* 143 F.3d at 1244 (citations omitted).  Here, however, Dr. Palasi explained that a 2017 MRI showed mild to moderate degenerative disc disease with compression of the L5 and S1

nerve root; and that 2017 x-rays showed a compression deformity at the L1 vertebral body; and office visits showed chronic pain treated with opiates; and that his diagnoses as of 2018 showed epilepsy with complex partial seizures, along with lumbar spine degenerative disc disease.  Tr. 1636.  The MRI report Dr. Palasi referenced also showed "bulging disks at both levels [L4-L5 and L5-S1] as well as superimposed focal disk protrusions at both levels causing compression of the traversing left L5 nerve root in the lateral recess at L4-L5 and the traversing right S1 nerve root in the lateral recess at L5-S1"; and multilevel foraminal narrowing with mild compression of the exiting left L4 and right L5 nerve roots."  Tr. 1536.  Findings on the report include disc protrusion at L4-L5 which "indents the thecal sac and is *severely compressing the traversing left L5 nerve root in the lateral recess*" (emphasis added).  Tr. 1535.  Notably, the ALJ's limited discussion of listing 1.04A at step three included the rationale that the "record is devoid of evidence of nerve root compression," which appears inconsistent with the imaging cited by Dr. Palasi in her review of medical evidence.  Dr. Palasi also cited to other evidence and findings to support her opinion, and the ALJ's conclusion that her opinion is not supported by the imaging she cited is not supported by substantial evidence.

Upon remand the ALJ is instructed to reconsider the opinion of Dr. Palasi, adopting her limitations or providing reasons supported by substantial evidence to discount the opinion.

### 3. *Ms. Rogers*

In February 2017 Plaintiff's treating provider, Ms. Rogers, completed a physical functional evaluation on behalf of DSHS and rendered an opinion on Plaintiff's level of functioning.  Tr. 1532-34.  She reported Plaintiff's diagnoses were partial symptomatic epilepsy with complex partial seizures, chronic left sided low back pain with left side sciatica, and mitral valve regurgitation.  Tr. 1532.  She noted numerous clinic visits from 2015 through 2017, along with specialist visits

and a hospitalization in December 2015.  *Id*.  She noted Plaintiff had non-exertional work limitations, explaining that "certain smells can trigger seizures" and that "abstinence from alcohol may have helped decrease and correct medications for seizures also effective."  Tr. 1533.  She noted MRI, x-ray, and lab reports were attached to her opinion form.  *Id*.  She opined he had severe limitation in his ability to lift, carry, push, pull, reach, see and communicate due to seizures, and moderate limitations his ability to sit, stand, walk, lift, push and pull due to back pain.  *Id*.  She opined he was able to perform sedentary work.  Tr. 1534.

On October 19, 2017, Ms. Rodgers completed another medical report form and rendered an opinion on Plaintiff's level of functioning.  Tr. 410-11.  Ms. Rodgers noted Plaintiff's diagnosis included epilepsy with complex partial seizures; spondylolisthesis of the lumbar spine with left sided sciatica, a closed compression fracture, and mitral valve prolapse/regurgitation.  Tr. 410.  She indicated Plaintiff had to lie down during the day, explaining "he can only be up 3-4 hours and needs to lay down or recline 30 min[utes]."  *Id*.  She reported he experienced side effects from seizure medication and did not drive, that he had "back problems - c[ould] not lift," that his conditions were likely to cause pain, and that his prognosis was "poor/guarded."  *Id*.  She opined that work on a regular and continuous basis would cause Plaintiff's condition to deteriorate; she explained he was at "high risk for more compression fractures" due to osteoporosis and at "risk for falls" due to epilepsy.  Tr. 411.  She opined if he tried to work full time, he would likely miss four or more days of work per month and that he would likely be off task over 30 percent of a 40-hour workweek.  *Id*.  Ms. Rogers opined "he has done everything he could to improve his condition so he can live independently.  However, he is disabled and needs at most sedentary activity."  *Id*.  The ALJ gave her opinion little weight.  As Ms. Rogers was an "other source," the ALJ was required to provide germane reasons to discount her opinion.  *Molina*, 674 F.3d at 1111.

First, the ALJ gave Ms. Rogers opinion little weight because it was speculative and "she uses a checkbox form with little explanation for her extreme limitations," and "[h]er opinion is inconsistent with her own treatment notes at 6F, which reflect significant improvement with sobriety." Tr. 432. The ALJ's reasoning here is exactly the same as provided in the ALJ's 2018 decision and found insufficient by this Court. *Compare* Tr. 21, 432, 552-53. The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case." *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016) (citing *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012)).

Here, following the first administrative hearing, this Court held that the ALJ erred in the evaluation of Ms. Rogers opinion because the ALJ failed to explain how her opinion was "speculative to a greater degree than any other predictive medical estimate regarding the effect of an individual's impairment." Tr. 552 (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). The Court also held that it "could not agree with the ALJ that the format in which Rogers's conclusions were memorialized was a germane reason to reject them," explaining that while Ms. Rogers checked several options on the form the ALJ cited, she used the form Plaintiff's representative provided her and she also "used nearly every available line on the two-page form to explain those opinions." Tr. 552-53. The Court explained that "in light of Nurse Rogers's fairly extensive treating relationship with Plaintiff, the Court cannot find that her opinions lacked a substantial basis in the medical record." Tr. 553 (citations omitted). Finally, the Court explained that the ALJ failed to identify which portions of Ms. Rogers opinions were inconsistent with the fact that he fared better when he was not drinking, "nor can the Court infer to which of those opinions the ALJ might have been referring." Tr. 553. The ALJ's reasoning in the 2021 decision repeats the ALJ's 2018 findings, which were found insufficient by this Court. To the extent that the identical reasoning was

previously rejected by the District Court, the ALJ was bound by the Court's previous decision.  The ALJ erred by discounting Ms. Rogers' opinions based primarily on the same reasons the District Court found insufficient.  This is grounds for remand.

Additionally, while the ALJ added a paragraph listing additional reasons to discount Ms. Rogers' opinions in the 2021 decision, the ALJ provided minimal discussion or citation to support the new reasoning.  Tr. 423-43.  The ALJ's new reasoning for rejecting Ms. Rogers' opinions included that Plaintiff solicited the October 2017 report, but the purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them.  *Lester*, 81 F.3d at 832 (citing *Ratto v. Sec'y, Dept. of Health and Human Servs.,* 839 F. Supp. 1415, 1426 (D. Or. 1993)).  The ALJ also concluded Ms. Rogers was "clearly not the best-positioned person to opine about the [Plaintiff's] primary alleged disability" because he was also followed by neurology and Ms. Rogers was not "the medical provider who is even treating [Plaintiff] for his seizure disorder."  Tr. 432-33.  However, Ms. Rogers was Plaintiff's primary care provider at the time she provided her opinion, and records show that she coordinated his care, including referring Plaintiff to neurology and other specialty providers within the Kadlec clinics/health system; she also prescribed seizure medication and provided treatment as needed when he was awaiting neurology consult.  *See, e.g.*, 283-86, 304.  These were also not germane reasons to discount her opinion.

The ALJ also found Ms. Rogers' opinion did not "necessarily address a duration requirement" because it was "dated less than 12 months after the [Plaintiff's] first complaint of back pain," Tr. 432-43, but as discussed in relation to Dr. Leinenbach's opinion, *supra*, which the ALJ did not address, records show a long history of chronic back issues.  The ALJ also concluded brief dyscognitive seizures "would not be expected to cause an entire missed day of work, nor is there any other basis for such a prediction."  Tr. 433.  However, this reasoning fails to

take Plaintiff's other impairments or side effects of medication into account, is not based on any medical evidence or opinion in the record and is similar to reasoning previously rejected by this Court's 2020 Remand order, discussed *supra*.

The ALJ also found Ms. Rogers' opinions regarding missed days "inconsistent with every other medical opinion in the record, none of which endorsed chronic absenteeism . . . all found [Plaintiff] capable of performing fulltime work." The ALJ cited without discussion or explanation some of the other medical opinions, including Plaintiff's treating neurologist, Dr. Raghunath. While Dr. Raghunath noted seizure precautions Plaintiff should adhere to in her treatment notes, she did not provide any opinion concerning Plaintiff's ability to perform fulltime work. Other providers, however, such as treating provider Mr. Roberts, did opine Plaintiff would likely miss more than four days of work a month due to his impairments. Tr. 1648. On this record, the ALJ's finding Ms. Rogers opinion was inconsistent with "every other medical opinion in the record" was also not a germane reason to reject her opinions.

As the case is remanded to consider the opinion of Dr. Leinenbach and to reassess the opinion of Dr. Palasi, and because the ALJ failed to follow the remand order in addressing Ms. Rogers' opinions, the ALJ is instructed to reevaluate Ms. Rogers' opinions, being mindful to avoid reasoning found insufficient by this Court.

### 4. Other Opinions

Plaintiff also challenged the ALJ's assessment of the opinions of Mr. Roberts and Dr. Pollack. ECF No. 13 at 14-16. As the case is being remanded for other errors in assessing the medical opinion evidence, the ALJ is instructed to reconsider all medical opinion evidence.

Upon remand, the ALJ is instructed to update the medical evidence of record and reassess all medical opinions in their entirety. The ALJ is directed to provide new analysis of the medical opinion evidence, being mindful to avoid reusing

analysis or reasoning found insufficient by this Court in 2020 and in the current Remand Order.

**B.    Step Three**

Plaintiff argues the ALJ failed to conduct an adequate analysis at step three and failed to find Plaintiff disabled as meeting or equaling a listed impairment. ECF No. 13 at 16-18. At step three of the sequential evaluation process, the ALJ considers whether one or more of the claimant's impairments meets or equals an impairment listed in Appendix 1 to Subpart P of the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Each Listing sets forth the "symptoms, signs, and laboratory findings" which must be established for a claimant's impairment to meet the Listing. *Tackett*, 180 F.3d at 1099. If a claimant meets or equals a Listing, the claimant is considered disabled without further inquiry. 20 C.F.R. §§ 404.1520(d), 416.920(d).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett*, 180 F.3d at 1099 (emphasis in original); 20 C.F.R. §§ 404.1525(d), 416.925(d). "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment . . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a). "If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment." *Id*. "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not [meet or equal a listing]." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). However, the ALJ is not required to

state why a claimant fails to satisfy every section of the listings if the ALJ adequately evaluates the evidence; and while the ALJ must discuss and evaluate the evidence that supports the ALJ's conclusions, the ALJ need not do so under any particular heading.  *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir. 1990); *Lewis*, 236 F.3d at 513.  Additionally, "[a]n adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide [a] rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3."  Social Security Ruling (SSR) 17-2p, 2017 WL 3928306, at *4 (effective March 27, 2017).

Plaintiff contends the ALJ erred in failing to find Plaintiff met or equaled listing 11.02B because he experienced at least one dyscognitive seizure per week for at least three consecutive months despite adherence to treatment.  ECF No. 13 at 16-17.

As part of his step three analysis, the ALJ found "the [Plaintiff] has presented no objective medical evidence of epilepsy" and noted that there are "multiple options for prolonged monitored EEG[1] to confirm and characterize seizure activity.  These monitored EEGs can be performed over the course of up to a week"; and the ALJ concluded "given the [Plaintiff's] reported seizure frequency, a monitored EEG would undoubtedly capture an alleged seizure event," and "[t]hus, the [Plaintiff's] alleged condition is readily susceptible to substantiation with objective evidence, but he has submitted none."

In the 2020 Remand Order, this Court held that the "ALJ erred by assigning disproportionate weight to the absence of clinical observations of seizure activity."  Tr. 549-50.  The Court explained that "given the transient nature of seizures and the intermittent frequency with which Plaintiff reported suffering them, it is hardly surprising that one never occurred during the time Plaintiff happened to be with

---

[1] Electroencephalography testing.

REPORT AND RECOMMENDATION . . . - 15

one of his doctors," noting that the Agency itself "does not require EEG findings to satisfy the criteria for a neurological listing and will not pay to administer such an examination."  Tr. 547 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.00(H)(5)). The ALJ persisted in this reasoning, however, at the 2021 hearing and in the 2021 decision, even after the medical expert testified that "in all medical probability he has epilepsy" and that "it is not uncommon that with seizures you go by patients or witness reports"; the ALJ spent much of the medical expert testimony asking about "prolonged video EEGs that can be done" and "the options for EEGs," despite the medical expert's testimony that "you might not do all of these, I'm just telling you the different types."  Tr. 475-78.  The ALJ then concluded in the decision that "given the [Plaintiff's] reported seizure frequency, a monitored EEG would undoubtedly capture an alleged seizure event," and "[t]hus, the [Plaintiff's] alleged condition is readily susceptible to substantiation with objective evidence, but he has submitted none."  Tr. 423.  This is not an accurate portrayal of the medical expert's testimony, however; the medical expert also explained "would I like a little more testing?  Yes.  But I'm guessing that his story and witness story when there was some witness available were fairly convincing."  Tr. 479-80.  The medical expert also testified Plaintiff and witness descriptions were consistent with a pattern of epilepsy.  *Id*.

In 2020 this Court explained that the ALJ appeared to give the negative EEG too much weight, noting "if the ALJ was aware of the limited diagnostic values of a negative EEG in assessing epilepsy, he did not say so on the record."  In the 2021 decision, while the ALJ acknowledged that "a negative EEG does not exclude the possibility of epilepsy" he then spent much of the medical expert testimony and part of the 2021 decision focused on Plaintiff's failure to obtain "more significant diagnostic workup" including more EEG testing, which appears, again, to give too much weight to testing that was not determinative in this case.  Tr. 424-25, 429-30.

As the case is remanded for errors in assessing the medical evidence, the Court declines conduct harmless error analysis, noting that the medical expert also testified that in her opinion Plaintiff did not meet or equal a listing during the period at issue. However, the Court finds the ALJ's continued focus on the lack of this specific objective evidence for an impairment that the medical expert, a neurologist, testified is not necessary, and despite this Court's finding he appeared to put too much emphasis on such evidence in the prior decision, constitutes additional failure to follow the remand order. Upon remand the ALJ is instructed to adhere to the Agency's own guidance and criteria in the listings to assess whether Plaintiff meets or equals a listing.

Plaintiff also contends that that the ALJ failed to properly assess whether his back impairment(s) met or equaled a listing, as the 2017 MRI showed evidence of severe nerve root compression. ECF No. 13 at 17-18. As the case is remanded to reassess the medical evidence and reperform the sequential analysis, the ALJ is instructed to reassess all step three findings.

Upon remand, the ALJ is instructed to reevaluate all evidence and perform the sequential analysis anew, including the step three analysis, and to make new findings at step three. If necessary, the ALJ will recall Dr. Pollack or another medical expert to provide an opinion as to whether Plaintiff met or equaled any listing(s) during the period at issue.

C.    **Symptom Claims**

Plaintiff contends the ALJ erred by improperly rejecting Plaintiff's subjective complaints. ECF No. 13 at 18-20. It is the province of the ALJ to make determinations regarding a claimant's subjective statements. *Andrews,* 53 F.3d at 1039. However, the ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is

unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester* at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Here, the ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 427.

### 1. *Inconsistent with Objective Medical Evidence*

As discussed *supra* in relation to step three, the ALJ found "the [Plaintiff] has presented no objective medical evidence of epilepsy." Tr. 424. After reviewing records from Plaintiff's prior neurologist from 2012 on, however, Plaintiff's treating neurologist, Dr. Raghunath declined to order additional EEG or MRI testing in 2015, noting these were done three years prior and negative; she also noted his history of complex partial epilepsy with secondary generalizes convulsive epilepsy and treated him for it with medication and seizure precautions. Tr. 302-04. The ALJ discounted Plaintiff's symptom reports in part due to the lack of objective medical evidence, faulting Plaintiff because he "has not pursued more significant diagnostic workup, like a video-monitored EEG, and has not followed up more frequently with his neurologist"; and the ALJ explained "he confirmed at the hearing that he has medical insurance and is able to get whatever treatment he has sought, so affordability is not a barrier." Tr. 430. This is not an accurate portrayal of Plaintiff's testimony, however, as he testified in 2021 that while he did have insurance, it did not cover everything. Tr. 499. Records show he has

Medicaid, and his providers have also noted cost of treatment has been an issue in his care. *See, e.g.*, Tr. 379 (Ms. Rogers noted a bone scan ordered after compression fracture, not approved yet as "Medicaid does not like to pay for these."), Tr. 304 (Dr. Raghunath explained that while "he m[ight] benefit from a second medication . . . in the past cost has been an issue."). As the Agency does not require and will not pay for EEG testing, as discussed *supra* in relation to step three, it is unclear why the ALJ persisted in this reasoning, except to discount Plaintiff's symptom complaints due to lack of EEG findings, even though this is not required by the Agency or by the providers including the specialist who treated Plaintiff for epilepsy.

On remand, a conclusion that Plaintiff's symptom complaints, in terms of epilepsy or seizures, are inconsistent with objective medical evidence because they are not supported by EEG or other diagnostic testing will not serve as a clear and convincing reason for rejecting Plaintiff's symptom testimony.

### 2. Other Reasons

The ALJ made other findings regarding the consistency of Plaintiff's symptom testimony with the medical and other evidence. However, given the errors already discussed, the Court declines to consider additional reasons here. Because this claim is being remanded for reevaluation of the medical evidence, including the medical opinion evidence, the ALJ must also reassess Plaintiff's subjective claims in light of the record as a whole. Upon remand, the ALJ shall carefully reevaluate Plaintiff's symptom claims, being mindful to follow the Remand Orders of this Court.

### D. Lay Witness Testimony and Step-Four and Step-Five

Plaintiff contends the ALJ also erred by improperly rejecting law witness testimony and failing to conduct an adequate analysis at steps four and five. ECF No. 13 at 18, 20-21. Having determined a remand is necessary to reconsider all medical evidence and perform the sequential analysis anew, the Court declines to

reach these issues.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012)

("Because we remand the case to the ALJ for the reasons stated, we decline to

reach [plaintiff's] alternative ground for remand.").

Upon remand the ALJ is instructed to reconsider all evidence, including all

lay witness statements.  Such testimony cannot be disregarded without comment,

and if a lay witness statement is rejected, the ALJ "'must give reasons that are

germane to each witness.'"  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)

(citing *Dodrill*, 12 F.3d at 919).

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's

decision is not supported by substantial evidence and not free of harmful error.

Plaintiff argues the decision should be reversed and remanded for the payment of

benefits.  ECF No. 13 at 21.  The Court has the discretion to remand the case for

additional evidence and findings or to award benefits.  *Smolen*, 80 F.3d at 1292.

The Court may award benefits if the record is fully developed and further

administrative proceedings would serve no useful purpose.  *Id*.  Remand is

appropriate when additional administrative proceedings could remedy defects.

*Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).  The Court will also not

remand for immediate payment of benefits if "the record as a whole creates serious

doubt that a claimant is, in fact, disabled."  *Garrison v. Colvin*, 759 F.3d 995, 1021

(9th Cir. 2014).

In this case, the Court finds that further proceedings are necessary to resolve

conflicts in the record, including conflicting medical opinions.  It is also unclear

whether Plaintiff was disabled by an impairment or a combination of impairments

during the period at issue, and if so, whether he was disabled throughout the period

at issue.

On remand, a new ALJ will be assigned to the case.[2]  The ALJ is instructed to update the record and reevaluate the evidence of record.  The ALJ is instructed to perform the sequential analysis anew, making new findings on each of the five steps of the sequential evaluation process, and to reassess all medical opinion evidence and plaintiff's subjective complaints, taking into consideration any other evidence or testimony relevant to Plaintiff's disability claim.  If deemed necessary, the ALJ will recall Dr. Pollack or another medical expert to assist in evaluating the medical evidence, including the medical opinion evidence, and to assist in determining whether Plaintiff met or equaled a listing at any time during the period at issue.

Accordingly, **IT IS HEREBY RECOMMENDED** Plaintiff's Motion for Summary Judgment, **ECF No. 13**, be **GRANTED**; Defendant's Motion for Summary Judgment, **ECF No. 14**, be **DENIED**; and the District Court Executive enter **Judgment for Plaintiff REVERSING and REMANDING** the matter for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

## OBJECTIONS

Any party may object to a magistrate judge's proposed findings, recommendations or report within fourteen (14) days following service with a copy thereof.  Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which objection is being made, and the basis therefor.  Any response to the objection shall be filed within fourteen (14) days after receipt of the objection.  Attention is

---

[2] This is consistent with Agency policy for cases remanded a second time.  *See* SSA Hearing, Appeals, and Litigation Law Manual (HALLEX) I-3-7-40(B), I-2-1-55(D)(5-6).

directed to Fed. R. Civ. P. 6(d), which adds additional time after certain kinds of service.

A district judge will make a *de novo* determination of those portions to which objection is made and may accept, reject, or modify the magistrate judge's determination. The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon. The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions. *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMJR 2, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to file this Report and Recommendation, provide copies to counsel.

DATED May 30, 2023.



_____
ALEXANDER C. EKSTROM
UNITED STATES MAGISTRATE JUDGE

REPORT AND RECOMMENDATION . . . - 22